NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2043

_____

DEXTER RODNEY,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A045-307-175)
Immigration Judge:  Honorable Walter A. Durling

_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2010

Before:  RENDELL, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>.

(Filed: September 14, 2010)

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

        Petitioner Dexter Rodney petitions for review of a final order of removal.  We will

deny the petition.

I.

Rodney, a native and citizen of Guyana, entered the United States as a lawful permanent resident in February 1996. On February 11, 2004, a jury in the U.S. District Court for the Southern District of New York found Rodney guilty of bank fraud, pursuant to 18 U.S.C. § 1344, and theft of government property, pursuant to 18 U.S.C. § 641, for his theft of over $30,000 in U.S. Treasury checks, which he subsequently deposited at Fleet Bank. On May 14, 2004, U.S. District Judge Victor Marrero sentenced Rodney principally to five months' imprisonment and ordered him to pay restitution to Fleet Bank in the amount of $23,450.21.

On July 12, 2007, the Government served Rodney with a Notice to Appear, charging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had committed an "aggravated felony," as that term is defined by 8 U.S.C. § 1101(a)(43)(M)(i), since he was convicted of bank fraud and "the amount of the funds exceeded $10,000." On November 6, 2007, an Immigration Judge ordered Rodney removed.

Rodney appealed to the Board of Immigration Appeals, arguing that the Government could not prove that a loss of $10,000 or more resulted from his bank fraud. On March 6, 2008, the BIA found that Rodney's former counsel was ineffective in failing to challenge the aggravated felony charge, and granted Rodney's motion to remand.

On April 1, 2008, Rodney appeared before the IJ and denied the charge of

removability. To support its claim that Rodney had caused a loss of more than $10,000, the Government introduced the pre-sentence investigation report ("PSR") from his criminal proceeding, which showed a loss to Fleet Bank of $23,450.21, as well as the criminal judgment, which reflected a restitution order for the same amount. However, the IJ held that this did not constitute sufficient evidence of the amount of loss, because it did not indicate how Judge Marrero had calculated the restitution award. The IJ therefore dismissed the removability charge and terminated the removal proceedings.

The Government appealed to the BIA. Citing our decision in *Nijhawan v. Attorney General*, 523 F.3d 387 (3d Cir. 2008), the BIA found that the Government had introduced adequate evidence of the loss caused by Rodney's conduct and sustained the appeal on July 28, 2008. The BIA noted that the PSR showed that Rodney had deposited stolen checks totaling $37,080.21 into his Fleet account, and that these checks caused Fleet to suffer a loss of $23,450.21. The BIA also noted that Judge Marrero had ordered Rodney to pay $23,450.21 in restitution. Furthermore, the BIA held that the totality of the evidence, including the criminal complaint, the judgment of conviction, the PSR, and the restitution order established that the loss was connected to Rodney's bank fraud conviction. The BIA therefore remanded the case to the IJ for proceedings consistent with its opinion.

On September 16, 2008, Rodney appeared before the IJ and argued that the BIA had not addressed his argument that the Government had failed to show that the loss to

3

Fleet Bank resulted from his bank fraud, rather than from his theft of government property. He further argued that he had not been given an opportunity to argue that *Nijhawan* was inapplicable to his case. In a ruling issued in October 2008, the IJ declined to permit Rodney to make further arguments because the BIA had already considered *Nijhawan*, and ordered Rodney removed to Guyana. Rodney appealed to the BIA again, raising the same arguments that he had just presented to the IJ. On March 12, 2009, the BIA dismissed Rodney's appeal, citing the reasoning from its previous decision. The BIA also indicated that, even if Rodney had not previously had an adequate opportunity to argue the impact of *Nijhawan*, "he has now submitted his arguments in this regard to the Board." App. 4.

Rodney now seeks review of the BIA's decision.

II.

Rodney challenges the BIA's determination that he caused a loss of more than $10,000, which was necessary in order to find that he had been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). "Whether [a] conviction constitutes an aggravated felony presents a question of law within our subject matter jurisdiction over which we exercise plenary review. . . . We do not defer to the BIA's determination of whether a crime constitutes an aggravated felony." *Henry v. Bureau of Immigration & Customs Enforcement*, 493 F.3d 303, 306 (3d Cir. 2007) (citations omitted). In applying the $10,000 threshold, we must consider "the specific

4

circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Nijhawan v. Holder*, 129 S. Ct. 2294, 2302 (2009). We exercise jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review "questions of law," including the question of whether a conviction constitutes an aggravated felony. *Henry*, 493 F.3d at 306.[1]

We agree with the BIA that the Government adequately proved that Rodney's bank fraud constituted an "aggravated felony." According to the PSR, Rodney deposited at least 47 fraudulently obtained checks at Fleet Bank, and "[t]he combined value of the checks totaled $37,080.21." App. 362. Two of these checks, which together were worth $13,630, never cleared, which meant that "the victim of this offense, Fleet Bank, suffered losses of $23,450.21." *Id.* Rodney did not challenge the content of the PSR at his sentencing before Judge Marrero, who then ordered him to pay restitution to Fleet Bank in the amount of $23,450.21. App. 394. This evidence is sufficient to establish that Rodney caused an actual loss to Fleet Bank of more than $10,000, that he was therefore convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(D), and that he is therefore removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

Although Rodney vigorously resists this straightforward conclusion, none of his arguments have merit. First, he points to an inconsistency in the PSR, which describes

---

[1] For this reason, we will deny the Government's motion to dismiss the petition for lack of jurisdiction.

5

the number of fraudulently checks he deposited as both 47 and 49. However, Rodney did not challenge this finding before Judge Marrero, and this inconsistency does not undermine the evidence that Rodney caused losses in excess of $10,000. Second, he argues that a restitution order alone is not necessarily sufficient evidence of the amount of loss. Although that may be true, the combination of the PSR and the restitution order in this case, especially in the absence of any contrary evidence pointing to a smaller loss, are sufficient to support the finding that Rodney caused a loss of $23,450.21. *Nijhawan*, 129 S. Ct. at 2903. Third, he argues that he did not plead guilty, did not admit the accuracy of the PSR, and did not otherwise admit that he had caused a loss in excess of $10,000. However, he cites no authority for the proposition that such admissions are necessary to the finding as to the loss amount.

Fourth, Rodney argues that there is no evidence that the pecuniary loss caused by his crimes resulted from his bank fraud, rather than his theft of government property. This contention is also without merit. The loss to Fleet Bank unquestionably resulted from his bank fraud--i.e., his "scheme . . . to defraud a financial institution; or . . . to obtain any of the moneys . . . [of] a financial institution, by means of false or fraudulent pretenses," 18 U.S.C. § 1344. Although his additional criminal actions in stealing the U.S. Treasury checks, in violation of 18 U.S.C. § 641, may have enabled him to perpetrate this fraud on the bank, the BIA was not required to dissect the causal chain as intricately as Rodney would like. Moreover, the only sensible interpretation of Judge

6

Marrero's restitution order is that Fleet Bank was the victim of Rodney's bank fraud, since restitution is used to compensate the "victim" of a crime, *see* 18 U.S.C. § 3664, and the bank could not have been a "victim" of Rodney's theft of *government* property.

Finally, Rodney argues that the BIA denied him due process by relying on our decision in *Nijhawan v. Attorney General*, 523 F.3d 387 (3d Cir. 2008), without giving him notice and an explicit invitation to present argument regarding the impact of that case. We can find no authority, and Rodney cites none, for the proposition that the BIA has a constitutional obligation to inform aliens of every legal authority on which it plans to rely. Moreover, in this case, Rodney had at least two opportunities to present arguments to the BIA regarding the impact of *Nijhawan*: both in response to the Government's brief prior to the BIA's July 2008 decision, and in his third appearance before the BIA, after the IJ's October 2008 decision.

We have considered Rodney's remaining arguments and find them to be without merit.

## III.

For the reasons set forth above, we will deny the petition for review.